This is a bill of interpleader designed to fix the rights of two real estate brokers to a commission of $8,050 for the sale of certain property in Newark to the board of education of that city.
On December 8th, 1930, complainants signed the following agreement:
"We hereby authorize Louis Schlesinger, Incorporated, and Feist Feist, Incorporated, jointly, to sell and we agree to sell our property Nos. 331-351 Chancellor avenue, bounded by Chancellor avenue, *Page 473 
Hobson street, Goldsmith avenue and the extension of Summit avenue, being block No. 3719, subject to all assessments, for the sum of two hundred twenty-five thousand ($225,000) dollars.
In the event that the above sale is made, we agree to pay Louis Schlesinger, Incorporated, and Feist Feist, Incorporated, jointly, the commission amounting to five (5%) per cent. of the selling price, said commission to be due and payable upon passing of title.
This agency is for a period of three (3) months.
 DAUGHTERS OF ISRAEL HOME FOR AGED. By ROSE TEPPER, LILLIAN STEIN, President. Secretary."
Both Feist Feist and Mr. Schlesinger accepted the agreement, and each did some work thereunder. What amount each actually did is a matter in dispute. It is conceded that the only purchaser that could be promptly secured was the board of education. Both brokers had some dealings with representatives of that board. The price of $225,000 was refused by the board of education. On February 10th, 1931, within the three months stipulated in the agreement, Mr. Schlesinger received the following letter from complainants:
"Mr. Louis Schlesinger, 31 Clinton Street, Newark, New Jersey.
Dear Mr. Schlesinger:
At a special meeting of the Daughters of Israel Home for Aged, held February 9th, 1931, the advisory board, who had the power to negotiate and sell the land owned by the above-named institution, and situated on Chancellor, Goldsmith, Summit avenues and Hobson street, also the small strip on Summit avenue through to Goldsmith avenue; reported that the final price offered by the Board of Education of the city of Newark, was $161,000 (one hundred and sixty-one thousand dollars); free and clear excepting subject to 1931 taxes.
It being unanimously resolved by the directors to accept the above price, we hereby authorize you to act as our representative in the above negotiation for the price and terms mentioned.
 Very truly yours, DAUGHTERS OF ISRAEL HOME FOR AGED. By ROSE TEPPER, LILLIAN STEIN, President. Secretary."
The property was sold at this figure and a commission of five per cent. of the selling price — which was mentioned in *Page 474 
the first agreement — was sent to Mr. Schlesinger. It is to be observed that no rate of commission is mentioned in the letter. No notice of this final agreement or of the closing of the deal was given Feist Feist.
Counsel for Mr. Schlesinger contends that the letter of February 9th supersedes the original agreement, which was a revocable power and therefore he is entitled to the entire commisson. Assuming it was a revocable power, there is no evidence that Feist Feist ever received any notice of the revocation. In fact, counsel for Mr. Schlesinger states in his brief that Feist Feist knew nothing about the $161,000 agreement, were not notified of it or of the closing of the deal "until he was informed by Henry Young, a member of the board, some time after." The deal was closed well within the three months period stipulated in the agreement. The commission paid was that agreed upon in the original agreement — as the letter to Mr. Schlesinger makes no mention of commissions. The buyer was the party which had been interviewed by both brokers during the course of the negotiations. There is nothing in the agreement which provides that the commission should be apportioned according to the work done, and if Mr. Schlesinger was more industrious than his fellow broker that is no reason why he should have all the commission or a greater part. He agreed to the terms of the original authorization. To be sure, the final price was less than that mentioned in the authorization.
But in Steinberg v. Mindlin, 96 N.J. Law 206, the court of errors and appeals held:
"In the absence of a special agreement, a real estate broker, acting by virtue of a written agreement earns his commission when he secures a buyer on the seller's terms either as originally propounded or as settled by agreement between the seller and buyer."
Chapter 273, laws of 1918, section 1, provides as follows:
"No broker or real estate agent selling or exchanging land for or on account of the owner shall be entitled to any commission for the sale or exchange of any real estate, unless the authority for selling or exchanging such land is in writing, and signed by the owner or his authorized agent, or the authority of the broker or real estate *Page 475 
agent to make a sale or exchange of such land is recognized in a writing or memorandum signed by the owner or his authorized agent, whether or not such writing or memorandum is signed by said owner or agent before or after such sale or exchange has been effected, and the rate of commission on the dollar shall have been stated therein."
It would seem, therefore, that the letter Mr. Schlesinger received cannot be enforced by him in an action for commissions, and if it have any value at all, must be considered as part of the original authorization, to which he and Feist Feist were parties in what may be termed a joint brokerage adventure.
I am of the opinion that Feist Feist were at least in part responsible for securing the board of education as a buyer, that the original authorization was not revoked and that they are entitled to one-half of the commission.